482 A.2d 873

**Walter R. TABLER et al.**

v.

**MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND.**

**No. 139, Sept. Term, 1983.**

Court of Appeals of Maryland.

Oct. 23, 1984.

Susan K. Gauvey, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., and Mary N. Humphries, Asst. Atty. Gen., Baltimore, on brief), for appellants/cross-appellees.

J. Michael Sloneker, Baltimore (John F. King and Anderson, Coe & King, Baltimore, on brief), for appellee.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON,\* RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of of Appeals (retired), Specially Assigned.

ORTH, Judge.

When the dominant insurer in Maryland decided to cease writing medical malpractice insurance in this State,[1] the General Assembly responded by creating the Medical Mutual Liability Insurance Society of Maryland (the Society). Acts 1975, Ch. 544; Md.Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.), Art. 48A, §§ 548–556. The purpose of the Society is:

> to provide for the payment of indemnities to persons suffering injury arising out of the rendering of or the failure to render professional services by physicians and to provide means whereby physicians may obtain insur-

---

\* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

**1.** *See St. Paul Fire & Mar. v. Ins. Comm'r,* 275 Md. 130, 134, 339 A.2d 291 (1975).

ance against liability for injury due to the rendering of or failure to render any professional service.... Art. 48A, § 548.

This physician controlled insurance company provides medical liability insurance to a majority of the physicians practicing in this State. *See Attorney General v. Johnson*, 282 Md. 274, 280–281, 385 A.2d 57, appeal dismissed, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

The same year in which the Society was created, a Medical Malpractice Insurance Study Committee, appointed by the presiding officers of both houses of the General Assembly, in its subsequent report to the legislature, indicated that the creation of the Society "represented only temporary relief for 'the myriad problems of medical malpractice insurance,' " and recommended additional legislation. *Id.* 282 Md. at 281, 385 A.2d 57. The result was the Health Care Malpractice Claims statute, Acts 1976, Ch. 235; Md. Code (1974, 1984 Repl.Vol.) §§ 3–2A–01 to 3–2A–09 of the Courts and Judicial Proceedings Article (the Act). "In general, the Act requires certain medical malpractice claims to be submitted to an arbitration panel for initial ascertainment of liability and damages before resort may be had to a court of law for final determination." *Oxtoby v. McGowan*, 294 Md. 83, 86, 447 A.2d 860 (1982). The Act created the Health Claims Arbitration Office (the Office) headed by a Director, § 3–2A–03(a). The Office promulgated "general regulations" implementing the Act. COMAR, Title 01, Subtitle 03, Ch. 01.

The Society's standard policy of medical professional liability insurance, which has been approved by and is on file with the Maryland Insurance Division, requires the Society to pay on behalf of its insured physicians certain sums which the insureds may become legally obligated to pay as damages because of medical malpractice, and to provide the insured physicians with a defense to any action at law potentially within policy coverage. It must also pay all costs taxed against the insured.

Section 3–2A–05(d) of the Act provides:

The arbitration panel shall first determine the issue of liability with respect to a claim referred to it. If the arbitration panel determines that the health care provider is not liable to the claimant or claimants the award shall be in favor of the health care provider. If the arbitration panel determines that a health care provider is liable to the claimant or claimants, it shall then consider, assess, and apportion appropriate damages against one or more of the health care providers that it has found to be liable.

Section 3–2A–05(e) declares that "[t]he award shall include an assessment of costs, including the arbitrators' fees."

COMAR 01.03.01.12 D.(1) reads:

An arbitration panel shall determine the arbitration costs, including arbitrators' fees, and may apportion the costs among parties.

It is not disputed that in the light of these statutes and the regulation that various arbitration panels in their awards have assessed arbitration costs against health care providers,[2] including physicians insured by the Society, in whose favor awards have been made on the issue of liability. The Society, aggrieved by this, filed a petition in the Baltimore City Court (now the Circuit Court for Baltimore City) against Walter R. Tabler, Director of the Office, and Dr. H. Louis Stettler, III, Secretary of the Department of Budget and Fiscal Planning (Tabler).[3] The Society requested the following relief:

---

**2.** For the meaning of "health care provider" *see* Md.Code (1974, 1984 Repl.Vol.) § 3–2A–01(e).

**3.** The petition alleged that the Department of Budget and Fiscal Planning "includes as a component part the Central Collection Unit of the State of Maryland. The Central Collection Unit serves as a collection agency for the State of Maryland, and as such is responsible for collecting those arbitration costs that have been assessed as part of the awards rendered by arbitration panels. . . ."

A.   A declaratory judgment to the effect that regulation 01.03.01.12 D.(1) is invalid and unenforceable;[4]

 B.   The issuance of a writ of mandamus directing the Director to issue an instruction to all health claims arbitration panel members "that under no circumstances may costs of arbitration be assessed against any party to a Health Claims Arbitration procedure in whose favor an award has been rendered, or in any proceeding where the case has been terminated by voluntary dismissal or otherwise, prior to the entry of an arbitration award;"

C. and D.   The issuance of a decree permanently (C) and interlocutorily (D) enjoining Respondents from further efforts to collect any costs of arbitration which have heretofor or may be, assessed against a health care provider in any case where an award has been entered in favor of the health care provider, or where the proceeding in arbitration has been terminated, by voluntary dismissal or otherwise, prior to the entry of an arbitration award;

E.   The award of damages to which the Society may be entitled by virtue of the collection of arbitration costs wrongfully assessed against physicians insured by it.

After the petition was duly answered, the Society filed a motion requesting that the court:

  (a) grant summary judgment in favor of it by issuing a declaratory judgment to the effect that regulation 01.03.-01.12 D.(1) is invalid and unenforceable;

  (b) issue a writ of mandamus directing the Director to issue an instruction to all health claims arbitration panel members that under no circumstances may costs of arbitration be assessed against any party to a health claims arbitration proceeding in whose favor an award has been rendered, or in any proceeding where the case has been terminated, by voluntary dismissal or otherwise, prior to the entry of an arbitration award;

---

4.   The relief requested in A. refers to regulation 01.03.01.12 D.(4). This is obviously a typographical error: The body of the petition cites 01.03.01.12 D.(1).

(c) issue a decree permanently enjoining Tabler, the Office and the Central Collection Unit from further efforts to collect any costs of arbitration which have heretofor been assessed against a health care provider in any case where an award has been entered in favor of the health care provider, or where the proceeding in arbitration has been terminated, by a voluntary dismissal or otherwise, prior to the entry of an arbitration award.

Tabler filed a motion for summary judgment in their favor "because there is no material dispute as to fact and they are entitled to judgment as a matter of law."

Under date of 4 May 1983 the court executed an order which vacated two orders previously issued on the motions and which stated that it was pursuant to and incorporated therein an "opinion letter" of the court dated 1 March 1983. The order:

(1) declared that COMAR 01.03.01.12 D.(1) was invalid as beyond the scope of the statutory provision, § 3–2A–05(d) of the Act;

(2) called for the issuance of a writ of mandamus to the Director ordering him to instruct all health claims arbitration panel members that costs may not be assessed against any party in whose favor an award has been entered in an arbitration proceeding;

(3) denied all other relief requested by the Society.

In the court's opinion letter incorporated in the order the court decided the "two main issues" it deemed were before it. The first is relevant to these appeals:

Is COMAR 0.1.03.01.12 D.(1) "an unfair and improper interpretation" of § 3–2A–05(d) of the Act?

The court thought that "the administrative regulation clearly goes beyond the language of the statute.... [It] clearly exceeds its statutory origin." It found "as a fact that [the regulation] is an incorrect interpretation to Section 3–2A–05(d)...." The court added that it found that the Society has had more than sufficient time to raise the issue with respect to ongoing cases, and, therefore, the court denies

the requests contained in paragraphs C, D and E of the Society's petition.

Tabler appealed from the order of 4 May 1983. The Society cross-appealed from those portions of the order denying relief it requested. We ordered, *ex mero motu*, the issuance of a writ of certiorari prior to consideration by the Court of Special Appeals.

On appeal Tabler asks only whether COMAR 01.03.01.12 D.(1) is consistent with § 3–2A–05 of the Act. On cross-appeal the Society asks whether the trial court erred in

(1) failing to invalidate COMAR 01.03.01.12 F.(3) permitting health care claims arbitration costs to be assessed and apportioned among the parties prior to entry of an award by the arbitration panel;

(2) failing to apply its order and writ of mandamus prohibiting the imposition of arbitration costs on prevailing parties to cases where costs of arbitration have already been imposed on prevailing parties.

### I.

█ We shall not decide the validity of COMAR 01.03.01.-12 F.(3). That regulation provides:

An arbitration panel shall determine the amount of arbitration costs incurred before settlement and may apportion the cost among the parties unless the settlement provides for payment of the costs.

The validity *vel non* of the regulation was never presented to the trial court as such and express reference to it is made for the first time in the Society's brief as cross-appellant. Obviously, the regulation concerns cases which have been terminated by voluntary dismissal or otherwise prior to the entry of an arbitration award. Although such cases are included in the relief requested by the Society's petition and in the relief requested in its motion for summary judgment, the body of the petition contained no allegations with respect to such cases. It is clear from the events leading to the final judgment in this case that the matter of assess-

ment of costs where a health claim had been terminated by voluntary dismissal or otherwise prior to the entry of an arbitration award was never litigated in the trial court. We recount those events.

On 8 March 1983 the court signed an order which included a direction to the Director

to issue an instruction to all health claims arbitration panel members that under no circumstances may costs of arbitration be assessed or levied ... in any health claims arbitration proceeding where the case has been terminated, by voluntary dismissal or otherwise, prior to the entry of an arbitration award.

In memoranda in support of a motion by Tabler to revise the judgment, it was pointed out that the matter of assessment of costs as to cases settled prior to an award had not been litigated. Tabler expressed and documented the serious problems which would result were the order to stand as rendered. A supplemental memorandum in support of Tabler's motion to revise concluded that in light of the problems involved and

to avoid present unnecessary financial hardship to the Health Claims Arbitration Office and unnecessary problems on appeal, [Tabler] asks this Court to vacate the Opinion and Orders entered in this case and enter a revised Order (a copy of the proposed order is attached). If the Court and counsel are agreeable to this course of action, [Tabler] will dismiss their present appeal and take an appeal from the Court's revised order.

Tabler's suggestion in this regard was followed. By its order of 4 May 1983, approved in form by the Society, the court vacated its previous orders. The new and final order made no reference, as we have seen *supra,* to the assessment of costs with respect to cases settled before an arbitration award. It is clear that neither the matter of the validity of COMAR 01.03.01.12 F.(3) nor the propriety of the purported assessment of costs in cases settled prior to an arbitration award was properly before the court, and that there was no final decision regarding them. Therefore, we

shall not entertain any issue pertaining to the regulation or such cases. Md.Rule 885.

## II.

In arguing the validity of COMAR 01.30.01.12 D.(1) the Society notes that when the Office regulations were adopted shortly after the passage of the Act, the Director had "no explicit statutory authority to promulgate regulations at all." It is correct that the Director was not expressly granted the power to adopt "reasonable rules and regulations to govern procedures" until § 3–2A–03 of the Act was amended by Acts 1981, Ch. 588 which added subsection (b)(3) to so provide. But after observing that "the regulation at issue in this case was adopted long before the director was given express power to adopt general regulations," the Society presents no argument that therefore the regulation is invalid. Rather, it proceeds on the assumption "for the sake of argument" that the Director did have the power to adopt the regulation. The question of the validity of the regulations of the Office in the absence of express statutory authority to adopt them when they were promulgated does not plainly appear from the record to have been litigated in the court below, Md. Rule 885, nor is it argued in the Society's brief on appeal, Md.Rule 831 d 5. Therefore, we do not decide the point.

## III.

We now reach the crux of these appeals, namely, whether COMAR 01.03.01.12 D.(1) is consistent with or beyond the scope of the Act.

## (A)

■ Preliminarily we dispose of the allegation that [u]nder color of this Regulation, the [Director] and other officials and employees of the Health Claims Arbitration Office under his direction, have established and maintain a consistent procedure of permitting and encouraging arbitration panels to assess part or all of the costs of

health claims arbitration against health care providers, including many physicians insured by the [Society], in whose favor awards have been entered.

The Director denies this allegation, but, in any event, it is not material. Arbitration panels

are not in any respect a part of the Health Claims Arbitration Office. The office's director refers the claim to the panel selected—or to a single arbitrator agreed upon by the parties—and the arbitration panel, when it has made an award, delivers it in writing to the director, § 3–2A–05(a) & (f), but there is no other nexus between the panel and the arbitration office. The arbitrators are not part of the office's staff; they are paid by the parties themselves, and not by any governmental unit; they serve purely on a voluntary basis; and they meet to consider a single claim and then disband. They are thus in no sense a typical organ of government.... [T]he arbitrators are obviously not a part of the executive unit created by the Act.... *Attorney General v. Johnson,* 282 Md. at 285–286 [385 A.2d 57].

It is clear that the Director has no control over the power of an arbitration panel to determine liability and to make an award. The Office, the Director and those under his direction may not exercise any quasi-judicial function whatever. *Id.* at 286, 385 A.2d 57. The Director has absolutely no authority to permit or forbid the assessment of costs by a panel or otherwise to interfere with or inject himself, directly or indirectly, into the deliberations and determinations of a panel. If the Society thought that the Director was improperly influencing a panel, it could resort to the statutory procedure whereby an award may be vacated if come about by "undue means." The Act, § 3–2A–06(c), referring to the Maryland Uniform Arbitration Act, Md.Code (1974, 1984 Repl.Vol.) § 3–224(a) and (b)(1) of the Courts and Judicial Proceedings Article. *See Attorney General v. Johnson,* 282 Md. at 280, 385 A.2d 57. The allegation has no bearing on our consideration of the issue.

### (B)

On appeal, all parties accept that the regulation in question permits an arbitration panel to impose costs on a prevailing party. The Society urges that the regulation is beyond the scope of the Act. Tabler claims that the regulation is consistent with the Act. The trial court agreed with the position of the Society and declared the regulation to be invalid "as beyond the scope" of the Act. We think that the trial court was wrong.

The arbitration panel determines whether the health care provider is liable to the claimant. The Act calls for an award by the arbitration panel upon its determination of liability. If the health care provider is determined not to be liable to the claimant, the award shall be in favor of the health care provider. If the health care provider is determined to be liable to the claimant the award shall be against the health care provider with appropriate damages. Section 3–2A–05(d) of the Act. *See Bishop v. Holy Cross Hospital*, 44 Md.App. 688, 410 A.2d 630 (1980). Subsection § 3–2A–05(e) of the Act prescribes that "[t]he award shall include an assessment of costs, including the arbitrators' fees." "Award" is not defined in the Act but according to *Black's Law Dictionary* 125 (5th ed. 1979) it means "[t]he decision or determination rendered by arbitrators or commissioners." *See Chillum v. Button & Goode*, 242 Md. 509, 516, 219 A.2d 801 (1966). It is plain that with respect to the award, damages and costs are separate and distinct each from the other. In other words, costs are not considered to be an element of damages. The dictate of subsection (e) is that, regardless of whom the award favors, included in the award shall be an assessment of costs. That subsection contains no prohibition against assessing the costs against the party on whose favor the award is made. On the face of the statutes the assessment of costs is left to the discretion of the arbitration panel. Thus, in the exercise of that discretion, an assessment of costs against the prevailing party does not offend the statutes. The challenged regulation is within the ambit of the Act and is simply

implementing it in prescribing that "[a]n arbitration panel shall determine the arbitration costs . . ., and may apportion the costs among parties."[5]

■ The discretionary awarding of costs is not a novel principle. The common law presents no impediment to such practice. Costs at the common law were unknown, or at least they were not given *eo nomine. Reese v. Mandel,* 224 Md. 121, 130, 167 A.2d 111 (1961). "[T]hey are purely statutory. . . ." *Id. See Kiersted v. Rogers & Garland,* 6 H. & J. 282, 286 (1824). The Maryland Rules authorize the awarding of costs in the discretion of the court at the trial level, Rule 3–603(a), and upon appeal, Rule 882(a) and Rule 1082(a). Of greater significance, perhaps, is that under the Act when judicial review is obtained upon rejection of an award, costs are assessed as the court may determine unless the verdict of the trier of fact on the appeal is not more favorable to the party that rejected the arbitration panel's award, than was the award. Only in that event, shall the costs be assessed against the rejecting party. § 3–2A–06(e). Thus the costs may be assessed against the rejecting party who prevailed on appeal by reason that the verdict of the trier of fact on appeal was more favorable to that party than was the award. Furthermore, under the Maryland Uniform Arbitration Act

> [u]nless the arbitration agreement provides otherwise, the award shall provide for payment of the arbitrators' expenses, fees, and any other expense incurred in the conduct of arbitration. Md.Code (1974, 1984 Repl.Vol.) § 3–221(a) of the Courts and Judicial Proceedings Article.

---

**5.** The Society points out that § 3–2A–05(d) of the Act, with reference to damages, speaks in terms of "consider, assess, and apportion" while subsection (e) refers only to "an assessment" of costs. It argues that "assessment" does not include "apportionment." But, the first definition of "assessment" given in Webster's New International Dictionary of the English Language 166 (2d ed. unabridged, 1961) is "an act of apportioning or determining an amount or amounts to be paid . . ." We are not convinced that the legislature intended a more restrictive meaning.

There is no prohibition there to an assessment of costs against a prevailing party.

We hold that COMAR 01.03.01.12 D.(1) is valid as within the scope of and consistent with § 3–2A–05(d) and (e) of the Act. The declaration of the trial court to the contrary is erroneous. We reverse it.[6]

## IV.

The trial court's actions regarding the Society's request for writs of mandamus are questioned by Tabler with respect to the grant of the writ ordering the Director "to instruct all health claims panel members that costs may not be assessed against any party in whose favor an award has been entered in an arbitration proceeding...." and by the Society with respect to the court's failure to apply the writ so as to prohibit "the imposition of arbitration costs on prevailing parties to cases where costs of arbitration have already been imposed on prevailing parties." Even if mandamus would lie to compel the Director to do what the Society would have him do,[7] the trial court erred in ordering

---

6. We note that the challenged regulation which allows an arbitration panel to assess costs against a prevailing party is not of recent adoption or of late application. The regulation was adopted shortly after 1 July 1976, the effective date of the Health Care Malpractice Claims statute. Prior to the adoption of the regulation it was duly published for public comments, suggestions and objections. 3:22 Md.Admin.Reg. 1256–1260 (27 Oct. 1976). It seems that arbitration panels have consistently applied it in exercising discretion to assess costs against a prevailing party. *See Comptroller v. John C. Louis Co.*, 285 Md. 527, 542–545, 404 A.2d 1045 (1979).

7. It is fundamental that mandamus does not lie to compel the performance of a duty not imposed and imperative. In other words, the writ cannot be used to compel an act which an official has no power or authority to perform. For a summary of the law of mandamus *see Bovey v. Exec. Dir., Health Claims*, 292 Md. 640, 643–649, 441 A.2d 333 (1982). We have seen that the Director had no power over an arbitration panel's determination of liability and assessment of damages and costs and he may not dictate to it concerning those matters. Part III(A) of this opinion. It would appear that, in any event, mandamus would not lie to compel the Director to do what the Society would have him do.

the writ to issue. Since we have determined that an arbitration panel may assess costs against a prevailing party, the reason underlying the Society's request for mandamus is erased. We reverse that portion of the judgment ordering a writ of mandamus to issue.

By the same token, the court, no matter what its reasons, did not err "in failing to apply its order and writ of mandamus prohibiting the imposition of arbitration costs on prevailing parties to cases where costs of arbitration have already been imposed on prevailing parties." We affirm the portion of the judgment which denied that relief.

### (B)

The Society requested that the court issue an interlocutory decree and a permanent decree enjoining Tabler

> from further efforts to collect any costs of arbitration which have heretofore been assessed against a health care provider in any case where an award has been entered in favor of the health care provider....

Our holding herein disposes of any question concerning the denial of this request. We affirm that portion of the judgment denying such injunctive relief.

### (C)

The Society's petition included a request for an award of damages to which it may be entitled by virtue of the alleged unlawful collection of costs. Our holding to the effect that the collection of the costs was not unlawful disposes of any question that the Society might be entitled to damages by reason of their collection. We observe that the matter of damages is not presented or argued on appeal and would, in any event, be deemed to have been abandoned.

### SUMMARY

1) We reverse that portion of the judgment declaring that COMAR 01.03.01.12 D.(1) is invalid as beyond the scope of § 3–2A–05(d) of the Act.

2) We reverse that portion of the judgment ordering that a writ of mandamus shall issue to the Director ordering him to instruct all health claims arbitration panel members that costs may not be assessed against any party in whose favor an award has been entered in an arbitration proceeding.

3) We affirm that portion of the judgment which denied "all other relief requested" by the Society as to those matters which were properly before the trial court.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AS SET OUT IN THIS OPINION;

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTIONS TO ENTER A JUDGMENT IN ACCORDANCE WITH THIS OPINION;

COSTS TO BE PAID BY THE MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND.