485 A.2d 265

**Louise C. BAILEY et vir.**

v.

**Gerard WOEL et al.**

**No. 111, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 26, 1984.

Charles Edward Mentzer, Baltimore, for appellants.

E. Dale Adkins III, Baltimore (J. Michael Sloneker, Patricia M. Flannery and Anderson, Coe & King, Baltimore, on the brief), for appellee Gerard Woel.

I. Marshall Seidler, Baltimore (Gerald I. Holtz and Eccleston & Seidler, Baltimore, on the brief), for appellee Baltimore County General Hosp.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY, and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

ELDRIDGE, Judge.

This case involves an interpretation of one of the requirements of the Health Care Malpractice Claims Act, Maryland

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but died prior to the adoption of the opinion by the Court.

Code (1984 Repl.Vol.), §§ 3–2A–01 through 3–2A–09 of the Courts and Judicial Proceedings Article. The issue is whether filing a medical malpractice claim with the Director of the Health Claims Arbitration Office, as required by § 3–2A–04 of the Act, and subsequently attending but declining to present evidence at or participate in an arbitration proceeding before a panel selected in accordance with § 3–2A–04, satisfies the statute's condition precedent to filing a tort action in circuit court.

In October 1979, the plaintiffs, Louise C. Bailey and her husband, John T. Bailey, filed a claim with the Director of the Health Claims Arbitration Office, alleging acts of medical malpractice by the defendants, Dr. Gerard Woel and Baltimore County General Hospital, in treating Mrs. Bailey in 1977 and 1978. Selection of an arbitration panel and minimal discovery took place, and the panel scheduled a hearing to be held February 1, 1982.

At the hearing, the panel chairman began by giving the plaintiffs' attorney the opportunity to make an opening statement. The attorney stated as follows: "After due discussion with Mr. and Mrs. Bailey ..., we decline to put on any testimony at this forum." He also declined to give any reason for this decision. The panel, with no evidence to determine the merits of the case, dismissed the claim on March 16, 1982.

On April 22, 1982, the plaintiffs filed a Petition to Nullify an Award and a Statement of Claim and prayer for jury trial in the Circuit Court for Baltimore County. In response, the defendants filed a Motion *Ne Recipiatur* and a Motion Raising Preliminary Objection, arguing that because the plaintiffs refused to participate in the hearing before the Arbitration Panel, they had not complied with a condition precedent to bringing suit in circuit court. The circuit court, after a hearing, granted both motions.

The plaintiffs appealed to the Court of Special Appeals, and that court affirmed, *Bailey v. Woel*, 55 Md.App. 488,

462 A.2d 91 (1983). The plaintiffs petitioned this Court for a writ of certiorari, which we granted, 297 Md. 716, 467 A.2d 498 (1983).[1]

The plaintiffs concede that their medical malpractice claim is one which the Act requires "be submitted to non-binding arbitration as a condition precedent to the institution of a court action," *Attorney General v. Johnson,* 282 Md. 274, 283–284, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).[2] The plaintiffs argue that, to satisfy the condition precedent of submitting to arbitration, they did not need to "present a case" at the panel hearing. In fact, they argue that they did more than the Act requires when they participated in discovery and appeared at the hearing; they maintain "that the mere filing of the Health Claims Arbitration Claim Form constitutes compliance with the 'condition precedent' to a jury trial . . . ." (Brief at pp. 5–6).

---

**1.** At oral argument a question was raised whether the granting of a motion raising preliminary objection was a final appealable order. We need not reach this issue here because, as pointed out above, a motion *ne recipiatur* addressed to the entire declaration was also granted. Our cases have consistently held that an order granting a motion *ne recipiatur* to the entire declaration, thereby having the effect of putting the parties out of court, is a final appealable order. *See, e.g., McSwain v. Tri-State Transportation Company, Inc.,* 301 Md. 363, 483 A.2d 43 (1984); *Mooring v. Kaufman,* 297 Md. 342, 347, 466 A.2d 872 (1983); *Morris v. Howard Res. & Dev. Corp.,* 278 Md. 417, 422, 365 A.2d 34 (1976); *Co. Comm'rs v. C.J. Langenfelder,* 237 Md. 368, 372–373, 206 A.2d 710 (1965); *McCormick v. Church,* 219 Md. 422, 426–427, 149 A.2d 768 (1959). *Compare Milio v. Bar Association,* 227 Md. 527, 529, 177 A.2d 871 (1962) (denial of motion *ne recipiatur* not having effect of putting party out of court is not final order).

**2.** § 3–2A–02(a) of the Act provides as follows:
"All claims, suits, and actions, including cross claims, third-party claims, and actions under Title 3 Subtitle 9 of this article, by a person against a health care provider for medical injury allegedly suffered by the person in which damages of more than $5,000 are sought are subject to and shall be governed by the provisions of this subtitle. An action or suit of that type may not be brought or pursued in any court of this State except in accordance with this subtitle. An action in which damages of $5,000 or less are sought is not subject to the provisions of this subtitle."

This Court thoroughly examined the Act in *Attorney General v. Johnson, supra,* 282 Md. 274, 385 A.2d 5. Our *Johnson* opinion made it clear that one of the goals of the General Assembly in establishing the arbitration procedure was to provide a means whereby court suits could be avoided as much as possible. The provision for arbitration was described as a requirement "that the litigants attempt to resolve their dispute by submitting it to an arbitral panel before presenting the controversy to a court for resolution," *id.* at 290, 385 A.2d 57. We likened the arbitration panel's function to that of a master in chancery, who initially "hears evidence and then reports his findings of fact and his recommendations to the chancellor," *id.* at 288, n. 14, 385 A.2d 57. The *Johnson* opinion, in rejecting an equal protection challenge to the statute, stated that

"[w]e have no difficulty in concluding that the legislative requirement that malpractice claimants, unlike other tort claimants, first *present their contentions* to an arbitration panel rests upon a ground of difference bearing a 'fair and substantial relation' to the object of the legislation, which seeks to encourage the resolution of such claims without judicial proceedings, thus reducing their cost ...." *Id.* at 312–313, 385 A.2d 57 (emphasis supplied).[3]

Clearly, then, the Court in *Johnson* interpreted the Act as requiring a thorough dispute resolution process in which a plaintiff would produce evidence to prove his case before the arbitration panel prior to filing suit in court.

Further support for requiring claimants to produce evidence before a medical malpractice arbitration panel is found in § 3–2A–05(d) of the Act, which provides that the

---

3. The Court also noted that the provision of § 3–2A–06(d), placing the burden of proving the incorrectness of a panel award on the party challenging it, does not place any additional burden on a plaintiff attacking an award, as "the burden was always on the plaintiff to prove his case." *Attorney General v. Johnson,* 282 Md. 274, 293, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978).

"arbitration panel shall first determine the issue of liability with respect to a claim ...." Obviously, if the panel has *no* evidence from which to determine liability, as the plaintiffs concede was the case here, the panel cannot perform its first duty.

Additionally, as this Court noted in *Kindley v. Governor of Maryland,* 289 Md. 620, 625, 426 A.2d 908 (1981), "a construction of a statute which is 'unreasonable, illogical or inconsistent with common sense should be avoided.'" Accepting the plaintiffs' argument would mean that the General Assembly had enacted, in §§ 3–2A–04 and 3–2A–05, an elaborate arbitration scheme providing, *inter alia,* detailed procedures for selection of arbitrators, duties of the arbitrators, and hearings before the panel, made the scheme *mandatory,* and then provided a medical malpractice claimant with the option to follow or not follow the scheme. We cannot countenance such an illogical construction of the statute.[4]

---

**4.** Of some relevance is the case law interpreting the procedure under the Workmen's Compensation Act, Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101, § 56, providing for review of the Commission's decisions. While significant differences may exist between the de novo review of an administrative agency's decision provided for in Article 101, § 56, and the common law tort suit to which medical malpractice claimants have had a right both before and since the passage of the Act, nevertheless, the schemes are analogous. In *Hathcock v. Loftin,* 179 Md. 676, 678–679, 22 A.2d 479 (1941), a workmen's compensation claim was filed with the Commission, which scheduled a hearing at the request of the employer. Although the claimants received notice of the hearing, they failed to appear and the Commission disallowed their claim. The claimants appealed to the Baltimore City Court, which dismissed the appeal. This Court, in affirming the dismissal, noted that in most workmen's compensation cases, material included in the original claim is sufficient for a decision. The Court, however, stated:

"But when a hearing is had such an *ex parte* presentation does not afford a basis of decision. Then the claim is in controversy, and the claimants put to their proof. There is only the one way in which the Commission can then determine the facts, namely by the hearing. And if no proof is offered in support of the claim, the first step in its establishment is not taken, and the ground of appeal in the Commission's determination of the facts, is lacking. The statute clearly contemplates and requires that, when the merits of the case

In reaching this conclusion, we are aware that courts in other states dealing with statutes similar to Maryland's have arrived at opposite results. In *Phoenix Gen. Hosp. v. Super. Ct. of Maricopa,* 138 Ariz. 504, 675 P.2d 1323 (1984), "counsel for the malpractice plaintiffs ... appeared before the [medical liability review] panel but declined to participate, refused to offer any evidence or to cross-examine, and, in effect, stood mute," 138 Ariz. at 505, 675 P.2d 1323. The Supreme Court of Arizona held that this satisfied the statutory requirement that the malpractice claim be first submitted to the arbitration panel. The Supreme Court of Florida reached the same conclusion in *Fisher v. Herrera,* 367 So.2d 204, 205 (Fla.1978). In our view, both the Arizona court and the Florida court failed to give sufficient weight to the practical effect of such construction on the statutory scheme created by the legislatures.[5]

---

require a decision upon a question of disputed fact, both parties shall have an opportunity, not only to present such evidence as they may desire, but also to be present at the taking and hearing of the evidence by the opposite party, so that each may have opportunity for the cross-examination of the other's witnesses.' *Bereda Mfg. Co. v. Industrial Board,* 275 Ill. 514, 519, 114 N.E. 275, 277. *Forrester v. Marland,* 142 Okl. 193, 194, 286 P. 302; *Gannuzzi v. Foxwood, Const. Co.,* 211 App.Div. 637, 207 N.Y.S. 363."

5. Courts in other states, dealing with malpractice statutes significantly different from Maryland's, have determined that statutory requirements that claimants present cases before medical review panels do not have to be followed in all situations. In *Denton v. Beth Israel Hospital,* 392 Mass. 277, 465 N.E.2d 779, 781–782, the court held that, under the Massachusetts statute, a medical malpractice claimant could waive proceedings, before a panel designed to screen frivolous suits, by filing notice of his intent to do so and posting the bond which would have been required had the panel found the suit to be without merit.

It was held in *Stone v. Buffalo General Hosp.,* 117 Misc.2d 889, 890–891, 459 N.Y.S.2d 394 (1983), that a trial court, in its discretion, could dispense with a required medical review panel in "uncomplicated, primarily factual disputes involving very little in the way of medical practice or expertise." The court noted that, under the New York statute, "[m]alpractice panels were intended to function as a screening process and as an additional, independent expert witness whose collective judgment, in the form of a unanimous opinion as to liability, was made admissible upon trial so as to offer the jury '....

Consequently, under the Maryland statute, a plaintiff who presents no evidence before a medical malpractice arbitration panel has not satisfied the condition precedent of submitting his claim to arbitration prior to instituting court action. The proper action for a circuit court to take when such a claim is filed is to dismiss the claim. *See Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860 (1982).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.

---

further guidance and insight into .... complex and difficult area[s]' of medical practice or procedure."